MCNUTT LAW FIRM, P.C.
Daniel R. McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
11441 Allerton Park Drive, #100
Las Vegas, Nevada 89135
Tel.: (702) 384-1170 / Fax.: (702) 384-5529
drm@mcnuttlawfirm.com
mcw@mcnuttlawfirm.com

WHITE & CASE LLP
Michael Kendall (pro hac vice forthcoming)
Alexandra Gliga (pro hac vice forthcoming)
Dan Medici (pro hac vice forthcoming)
75 State Street
Boston, Massachusetts 02109
Tel: (617) 979-9300 / Fax: (617) 979-9301
michael.kendall@whitecase.com
alexandra.gliga@whitecase.com
dan.medici@whitecase.com

*Counsel for Defendants Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov*

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JYSAN HOLDING, LLC, a Nevada Limited Liability Company; JUSAN TECHNOLOGIES LTD, an England and Wales Limited Company; | Case No.: 2:23-cv-00247-JAD-VCF |
| Plaintiff, | |
| REPUBLIC OF KAZAKHSTAN, a foreign sovereign state; THE AGENCY FOR REGULATION AND DEVELOPMENT OF THE FINANCIAL MARKET OF THE REPUBLIC OF KAZAKHSTAN, a Kazakhstan Government agency; THE ANTI-CORRUPTION AGENCY OF THE REPUBLIC OF KAZAKHSTAN, a Kazakhstan Government anti-corruption agency; THE FINANCIAL MONITORING AGENCY OF THE REPUBLIC OF KAZAKHSTAN, a Kazakhstan Government agency; THE COMMITTEE FOR NATIONAL SECURITY OF KAZAKHSTAN, a Kazakhstan Government intelligence agency; MADINA ABYLKASSYMOVA, an individual; | **DEFENDANTS MADINA ABYLKASSYMOVA, OLZHAS KIZATOV, AND ARMAN OMARBEKOV'S MOTION TO DISMISS**<br><br>**ORAL ARGUMENT REQUESTED** |

OLZHAS KIZATOV, an individual;
ARMAN OMARBEKOV, an individual; and
ADILBEK DZHAKSYBELOV, an
individual,

    Defendants.

Defendants Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov move to dismiss the Complaint of Plaintiffs Jysan Holding, LLC, and Jusan Technologies, Limited, in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(5), and (b)(6) and on grounds of *forum non conveniens*. As set forth below, this Court lacks federal subject-matter jurisdiction over any claims against these Defendants because they are entitled to sovereign immunity as public officials of a foreign state. Moreover, the Court has no personal jurisdiction over these Defendants, as the Complaint does not allege any contacts with the United States; this Court is a wholly inconvenient forum for this dispute; service was insufficient; and Plaintiffs fail to state a claim under statutes that do not apply to the Defendants' extraterritorial conduct.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Persons not disclosed in the Complaint created Plaintiffs Jysan Holding, LLC ("Jysan Holding") and Jusan Technologies, Limited ("JTL") to hold assets that originated in the Republic of Kazakhstan (the "Republic"). Now, after the Republic has begun to investigate the Plaintiffs' Kazakhstani subsidiaries over possible fraud related to those assets, Plaintiffs ask this Court to engage in an unprecedented judicial intervention into a foreign state's domestic affairs, and disrupt: (1) the Republic's civil and criminal investigations into possible bank fraud and money laundering by Plaintiffs' Kazakhstani subsidiaries and control persons; (2) the Republic's regulatory actions to combat such possible fraud; (3) the Prosecutor General of the Republic's enforcement actions against Plaintiffs; and even (4) the duly enacted legislation of the Republic's Parliament.

The Complaint arises from a dispute in Kazakhstan about the proper ownership of billions of dollars of assets meant to fund over 20 schools in Kazakhstan, including one of its largest

1    universities. This case has no connection to Nevada or the United States other than the fact that

2    unspecified persons organized Jysan Holding in Nevada to serve as a remote owner of assets that

3    originate in Kazakhstan and are supposed to fund Kazakhstani schools. Plaintiffs allege they

4    support these schools by receiving dividend payments from a Kazakhstani bank and, in turn,

5    transferring funds to a Nevada charity that ostensibly exists to fund the schools. According to

6    Plaintiffs, the Republic is trying to take that money for itself and for specified individuals.

7         Defendants dispute these allegations, and maintain that Plaintiffs have tried to illegally

8    transfer money out of Kazakhstan and divert it to themselves and away from the very causes they

9    claim to support. Defendants maintain that the Republic's investigations and regulatory and other

10   actions are justified efforts to prevent Plaintiffs' theft of billions of dollars in Kazakhstan.

11        The instant Motion to Dismiss, however, does not concern the merits of this dispute. Rather,

12   this Motion to Dismiss demonstrates the complete lack of any basis for Plaintiffs to name as

13   Defendants three of the Republic's government officials: Madina Abylkassymova, Olzhas Kizatov,

14   and Arman Omarbekov (the "Government Official Defendants").[1] The Court lacks federal subject-

15   matter jurisdiction over any claims against the Government Official Defendants because common

16   law sovereign immunity wholly shields them, as the Complaint merely alleges they acted at the

17   Republic's direction. *See Doğan v. Barak*, 932 F.3d 888, 892-94 (9th Cir. 2019).

18        The Court does not have personal jurisdiction over the Government Official Defendants,

19   either, because the Complaint hardly even mentions them—other than to note their Kazakhstani

20   citizenship and residence, their employment as Kazakhstani civil servants, and some interactions

21   two of them allegedly had in Kazakhstan with Plaintiffs' Kazakhstani subsidiaries about the

22   Kazakhstani Government's investigations. None of Plaintiffs' allegations remotely suggest these

23

24   _____

[1] Plaintiffs had not completed their purported service on the Republic and its defendant agencies by

25   the time they purportedly served the Government Official Defendants. Plaintiffs would not agree to seek
     court approval of a schedule for consolidated briefing for all defendants after service on all defendants. Thus,

26   only the Government Official Defendants have moved to dismiss as of this date. Though they make no
     statement or court appearance as of yet, it is reasonable to assume the Republic and its agencies likely will

27   move to dismiss at a later date.

28        Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

Defendants have any U.S. contacts. Plaintiffs seem to erroneously assert personal jurisdiction based on *their own contacts* with Nevada, since they do not allege that the Government Official Defendants have any. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068-71 (9th Cir. 2017). Moreover, this Court is an entirely unreasonable and inconvenient forum for a dispute concerning distinctly Kazakhstani interests—that is, the proper ownership of funds that originate in Kazakhstan and are for the benefit of Kazakhstani children's education.

Plaintiffs have sued the Republic, its agencies, and three of its officials in a transparent attempt to interfere with certain of the Republic's sovereign acts that relate to Plaintiffs' assets in Kazakhstan. As the Complaint makes clear, all of the relevant events occurred in Kazakhstan and pursuant to the Republic's investigations into Plaintiffs' Kazakhstani subsidiaries. Plaintiffs' request of this Court is, thus, truly extraordinary: to exercise jurisdiction over the Republic, its agencies, and its officials based on claims allegedly ***arising from Defendants' official acts within the Republic's own territory***. The Court should reject Plaintiffs' audacious invitation to micromanage and invalidate the regulatory actions of a foreign state.

## II.    SUMMARY OF THE COMPLAINT'S ALLEGATIONS

In January 2022, the Republic began investigating two Kazakhstani business entities, First Heartland Securities JSC ("FHS"), and its subsidiary, First Heartland Bank. Compl. ¶ 62. Several of the Republic's agencies—the Agency for the Regulation and Development of the Financial Markets ("ARDFM")[2], the Financial Monitoring Agency ("FMA"), and the Anti-Corruption Agency ("AARK")—have led the investigations. *Id.* ¶¶ 63-72, 75-98. The Republic has told FHS and First Heartland Bank that it is investigating whether these entities' parent companies—that is, Plaintiffs—are diverting out of Kazakhstan money that belongs to the Republic. *Id.* ¶¶ 79, 84, 88, 96, 98. During the investigations, AARK instructed ARDFM to block dividend payments from FHS and First Heartland Bank to Plaintiffs. *Id.* ¶ 79. ARDFM has done so and continues to do so. *Id.*

---

[2]    The Government Official Defendants are employees of ARDFM. Compl. ¶¶ 18-20.

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

¶¶ 87, 95. FMA has also suspended First Heartland Bank's ability to pay dividends. *Id.* ¶ 98.

The Republic's Parliament passed legislation in late 2022 allowing ARDFM to block payments of dividends from banks, such as First Heartland Bank, that have "received Government assistance."[3] *Id.* ¶ 107. The legislation also requires ARDFM's approval for "major direct and indirect shareholders and controlling entities of banks." *Id.*

The Republic's Prosecutor General has filed two legal actions in Kazakhstan seeking from Plaintiffs the return of funds transferred out of Kazakhstan and to invalidate intercompany agreements between Plaintiffs and their subsidiaries that would eliminate Plaintiffs' "access to dividends and distributions" from their Kazakhstani subsidiaries. *Id.* ¶ 113; *see id.* ¶ 116.

Plaintiffs are the parent companies of FHS and First Heartland Bank. *Id.* ¶¶ 11-12. Jysan Holding is a Nevada limited liability company. *Id.* ¶ 11. Its sole member is New Generation Foundation, Inc. ("NGF"), a 501(c)(4) organization. *Id.* ¶¶ 11, 46. Plaintiffs allege that NGF "secure[s] funding for the activities of Nazarbayev University and Nazarbayev Intellectual Schools"—which are elementary-, secondary-, and college-level schools in Kazakhstan. *Id.* ¶¶ 41-42, 46.

Jysan Holding owns a 96.96% direct interest in JTL, a limited company organized under the laws of England and Wales. *Id.* ¶ 12. JTL in turn owns a 99.48% interest in FHS, and FHS is the direct parent company of First Heartland Bank.[4] *Id.* ¶¶ 2, 12, 49. Accordingly, Plaintiffs allege that profits from First Heartland Bank travel as follows. *Id.* ¶¶ 46, 49.



The Complaint is silent as to what purpose JTL serves other than to receive dividends from

---

[3]    FHS and First Heartland Bank received financial assistance from the Republic when the Republic bailed out two struggling Kazakhstani banks to induce FHS to buy those banks on preferred terms (i.e., without purchasing one bank's "distressed assets" or the other's "losses in its credit portfolio"). Compl. ¶¶ 31, 37; *see id.* ¶¶ 30-39. First Heartland Bank absorbed these two banks. *Id.* ¶ 53.

[4]    The Complaint and this Motion to Dismiss refer to NGF, Jysan Holding, JTL, and their direct and indirect subsidiaries collectively as the "Jusan Group."

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

5

1   FHS and pay dividends to Jysan Holding. *Id.* ¶ 11 (stating that JTL is Jysan Holding's holding
2   company). The Complaint is similarly sparse about Jysan Holding's purpose, noting only that it
3   "manages businesses and other investments of NGF." *Id.* ¶ 11; *see id.* ¶ 46.

4   **III.    THE COMPLAINT FAILS TO ALLEGE SUBJECT-MATTER JURISDICTION
         BECAUSE THE GOVERNMENT OFFICIAL DEFENDANTS ARE ENTITLED TO
5         COMMON LAW SOVEREIGN IMMUNITY**

6           This Court lacks subject-matter jurisdiction over claims against parties, such as the
7   Government Official Defendants, who are entitled to sovereign immunity. Fed. R. Civ. P. 12(b)(1);
8   *see Doğan*, 932 F.3d at 892-94. The Government Official Defendants bring a facial challenge to
9   subject-matter jurisdiction; that is, Defendants contend "that the allegations contained in [the]
10  [C]omplaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v.*
11  *Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In addressing a facial challenge, the Court must
12  "determine whether the [C]omplaint alleges 'sufficient factual matter, accepted as true, to state a
13  claim to relief that is plausible on its face.'" *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131
14  (9th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

15          "Common law sovereign immunity extends to an individual foreign official for 'acts
16  performed in his official capacity if the effect of exercising jurisdiction would be to enforce a rule
17  of law against the state.'" *Doğan*, 932 F.3d at 893-94 (quoting Restatement (Second) of Foreign
18  Relations Law § 66(f) (1965)); *see Samantar v. Yousuf*, 560 U.S. 305, 324-25 (2010). The
19  Government Official Defendants easily meet both of these requirements.

20          First, the Government Official Defendants are foreign government officials, Compl.
21  ¶¶ 18-20, and each "operat[ed] under the color of authority of" the Republic "directly through
22  employment by the Government." *Id.* ¶ 60. There is no question that the Government Official
23  Defendants acted "in [their] official capacit[ies]." *Doğan*, 932 F.3d at 893-94.

24          Second, exercising jurisdiction over the Government Official Defendants "would be to
25  enforce a rule of law against the state." *Id.* (quoting Restatement (Second) of Foreign Relations
26  Law § 66(f)). Plaintiffs sue the Government Official Defendants for their official acts and because

27

28          Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

of their positions as Government employees. Compl. ¶ 60. The Complaint does not allege that the Government Official Defendants exercised their official powers inconsistent with the Republic's interests or without actual or apparent authority. *Cf. Doğan*, 932 F.3d at 894 (finding common law sovereign immunity where an official acted on the direction of the foreign state's prime minister and in a manner proscribed by the foreign state's law); *Mireskandari v. Mayne*, 800 Fed. App'x 519, 519-20 (9th Cir. 2020) (affirming dismissal on common law sovereign immunity grounds where foreign officials "acted to further the objectives of foreign government entities"). To the contrary, the Complaint clearly alleges that the Government Official Defendants acted as the Republic wanted and directed them to. *See, e.g.*, Compl. ¶¶ 1-2, 60, 62, 73-74, 83-84, 102, 110. Thus, there is no practical distinction between the Government Official Defendants' actions and the Republic's actions. *See, e.g.*, *Lenhardt v. Fed. Republic of Germany*, No. 21-4048-TC-ADM, 2021 WL 4170758, at *4 (D. Kan. Aug. 20, 2021) (dismissing claims against foreign official).

Indeed, numerous courts have recognized that foreign official immunity applies "where the allegations against the official named as a defendant demonstrate that the 'state is the real party in interest.'" *Smith v. Ghana Com. Bank, Ltd.*, No. 10cv4655, 2012 WL 2930462, at *6 (D. Minn. June 18, 2012) (quoting *Samantar*, 560 U.S. at 325); *see Photos v. People's Republic of China*, No. 3:20cv656, 2020 WL 6889016, at *5-7 (N.D. Tex. Nov. 24, 2020) (collecting cases). The Restatement contains an easily distinguishable example of a foreign state's employee's official act to which no immunity would apply because to deny immunity would not be to enforce a rule of law against the foreign state and because the foreign state is not the real party in interest:

> *X is an employee of the naturalization service of state A* employed in state B for the purpose of inspecting the credentials of prospective migrants from B to A. *While driving a car on an official mission*, he injures Y, a national of B. Y sues X in B, alleging that his injury was due to the negligence of X. X is not entitled to the immunity of A under § 65.

Restatement (Second) of Foreign Relations Law § 66 cmt. b, Illustration 3 (emphases added). In contrast to this illustration, exercising jurisdiction over the Government Official Defendants would necessarily require this Court to adjudicate Plaintiffs' claims that the Republic's exercise of its law

enforcement powers—by and through the Government Official Defendants (among other Government employees)—was unlawful. There is no question that Plaintiffs' claims are against the Republic and not its officials given the meager allegations against the Government Official Defendants individually. *See infra* Part IV (summarizing allegations against the Government Official Defendants specifically, as opposed to allegations against "the Government" generally).

Moreover, any damages Plaintiffs might recover would "be payable by the [Kazakhstani] government and not from the [Government Official Defendants'] 'own pockets,'" whether evaluated under U.S. or Kazakhstani law. *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 35 (D.D.C. 2013) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *see* Civil Code art. 922 ¶ 3 (Kz.).[5] Thus, exercising jurisdiction over the Government Official Defendants would be tantamount to exercising jurisdiction over the Republic itself, and the Government Official Defendants are therefore entitled to sovereign immunity. *See Doğan*, 932 F.3d at 894.

## IV.   THE COURT LACKS PERSONAL JURISDICTION OVER THE GOVERNMENT OFFICIAL DEFENDANTS

Plaintiffs have the burden of showing that personal jurisdiction exists. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Where the motion to dismiss is based on the insufficiency of the Complaint, the Court must grant the motion if it finds that Plaintiffs have not made a prima facie case of jurisdiction. *See id.*

Plaintiffs assert that the Court has personal jurisdiction over the Government Official Defendants under Nev. Rev. Stat. § 14.065 and Federal Rule of Civil Procedure 4(k)(2). Both allow a court to assert personal jurisdiction over a party if the exercise of jurisdiction does not offend due

---

[5]    Paragraph 3 of Article 922 of the Kazakhstani Civil Code provides, "Harm caused by state bodies' officials due to unlawful actions (inactions) in the administrative governance area shall be compensated on a general basis (article 917 of this Code) at the expense of money *at the disposal of these bodies*. If they are insufficient, the harm shall be *compensated subsidiarily at the expense of the state treasury*." Ex. 1, Z. Nogaibay Decl. ¶ 7 (April 10, 2023) (emphasis added); *see also de Fontbrune v. Wofsy*, 838 F.3d 992, 998 (9th Cir. 2016) (allowing courts to consider, on a motion to dismiss, materials relevant to a determination of foreign law under Federal Rule of Civil Procedure 44.1).

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

1   process.[6] "Due process requires that a defendant who is not present in the forum has 'certain

2   minimum contacts' with the forum 'such that the maintenance of the suit does not offend traditional

3   notions of fair play and substantial justice.'" *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208

4   (9th Cir. 2020) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). To comport with

5   due process, Plaintiffs must show that the Government Official Defendants have sufficient

6   minimum contacts "with the [United States] as a whole." *Holland Am. Line, Inc. v. Wartsila N.*

7   *Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007).

8        To establish specific personal jurisdiction, Plaintiffs must show that: (1) the Government

9   Official Defendants purposefully directed their activities toward the forum or purposefully availed

10  themselves of the privileges of conducting activities in the forum; (2) Plaintiffs' claims must arise

11  out of or relate to the Government Official Defendant's forum-related activities; and (3) the exercise

12  of jurisdiction must comport with notions of fair play and substantial justice.[7] *See Axiom Foods,*

13  *Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). Critically, the minimum contacts

14  inquiry is "defendant-focused." *Id.* This means "[f]irst, the relationship between the nonresident

15  defendant, the forum, and the litigation must arise out of contacts that the 'defendant himself'

16  creates with the forum State. Second, the minimum contacts analysis examines the defendant's

17  contacts with the forum State itself, not the defendant's contacts with persons who reside there."

18  *Id.* (citations omitted). Plaintiffs fail to establish all three prongs because they do not allege that the

19  Government Official Defendants have any contacts with the United States.

20

21

22  [6]     Plaintiffs also assert personal jurisdiction under 18 U.S.C. § 1965 and Federal Rule of Civil
    Procedure 4(k)(1)(C). Section 1965 does not apply because it authorizes service of process only in a "judicial
23  district of the United States." 18 U.S.C. § 1965(b); *see id.* § 1965(d). Plaintiffs served the Government
    Official Defendants by DHL courier to their offices in Kazakhstan. ECF No. 17. Rule 4(k)(1)(C) does not
    establish personal jurisdiction over the Government Official Defendants because, as noted, no federal statute
24  authorizes personal jurisdiction over them. *See* Fed. R. Civ. P. 4(k)(1)(C).

25  [7]     Plaintiffs cannot establish general personal jurisdiction over the Government Official Defendants,
    all of whom live in Kazakhstan. *See, e.g.*, *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 131 S. Ct. 1017,
26  1024 (2021) (explaining that general personal jurisdiction exists only where an individual is "essentially at
    home," and calling an individual's "place of domicile" the "'paradigm' case") (quoting *Goodyear Dunlop*
27  *Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)); *see also* Compl. ¶¶ 18-20.

28      Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

9

## A. The Government Official Defendants Did Not Purposefully Direct Any Activity to the United States

Where, as here, a case sounds in tort, courts "employ the purposeful direction test," which requires: "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'"[8] *Id.* (quoting *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 673 (9th Cir. 2012)).

"Personal jurisdiction over an individual who acts as an agent of a third party must be assessed on the individual's actions alone." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020). Thus, the Court must look to each Government Official Defendant's own actions and contacts with the United States in assessing jurisdiction. *See id.* Plaintiffs' allegations against each of the Government Official Defendants are legally insufficient.

- As to Ms. Abylkassymova, the Complaint alleges only that she "is the Chairperson of ARDFM" and "is a resident and citizen of Kazakhstan." Compl. ¶ 18. The Complaint does not mention her again.

- The Complaint alleges that Mr. Kizatov "is the Deputy Chairperson of ARDFM" and "is a resident and citizen of Kazakhstan." *Id.* ¶ 19. Plaintiffs allege that Mr. Kizatov signed correspondence—sent to First Heartland Bank (a Kazakhstani entity), not Plaintiffs—that summarized the instructions another government agency gave to ARDFM. *Id.* ¶ 79. Additionally, the Complaint alleges that Mr. Kizatov participated in a call to First Heartland Bank, though it does not say (a) whether he said anything on that call, nor (b) that the call had any U.S. nexus. *Id.* ¶ 96.

- The Complaint alleges that Mr. Omarbekov "is a representative of ARDFM" and "is a resident and citizen of Kazakhstan." *Id.* ¶ 20. Plaintiffs allege that Mr. Omarbekov also participated in the call with First Heartland Bank and "claim[ed] that the Bank's funds belong to the Government of Kazakhstan and threaten[ed] that law enforcement was preparing to arrest and interrogate employees of the Bank and employees of its affiliates." *Id.* ¶ 96. The Complaint further alleges that Mr. Omarbekov called First Heartland Bank and told it that another Kazakhstani government agency instructed ARDFM to block dividend payments from the bank. *Id.* ¶ 97.

---

[8] Plaintiffs do not allege that the Government Official Defendants conducted activities *in* the United States, let alone that they "purposefully availed [themselves] of the privilege of conducting activities in the [United States]." *Axiom Foods*, 874 F.3d at 1068. Plaintiffs cannot satisfy the "purposeful availment" test.

Other than these allegations, the Complaint says virtually nothing about the Government Official Defendants: Plaintiffs allege only that Defendants' "goal was to wrongfully obtain the assets of the Jusan Group for the benefit of the Individual Defendants." *Id.* ¶ 60. The Complaint also references the Government Official Defendants in Paragraphs 131-137, which merely recite verbatim the elements of a RICO claim but lack detailed factual allegations.[9] *Id.* ¶¶ 131-37.

These allegations do not come close to establishing "purposeful direction." *Axiom Food*, 874 F.3d at 1068. Plaintiffs do not allege ***any*** act by Ms. Abylkassymova, let alone that she expressly directed an intentional act to the United States. *Id.* at 1069. The only acts Plaintiffs allege against Mr. Kizatov and Mr. Omarbekov are communications made in their capacity as state officials in Kazakhstan with First Heartland Bank, a Kazakhstani entity, about the Republic's investigations. Compl. ¶¶ 79, 96-97.

These acts have nothing to do with the United States other than the fact that a Nevada entity indirectly owns First Heartland Bank. The Supreme Court in *Walden v. Fiore* expressly rejected the "conclusion that [a defendant's] knowledge of [the] plaintiff's strong forum connections, plus the foreseeable harm the plaintiff[] suffered in the forum, comprise[s] sufficient minimum contacts." *Axiom Foods*, 874 F.3d at 1069-70 (alterations omitted) (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)); *see Lerner v. Exec. Mktg. Consultants, Inc.*, No. 2:18cv1481, 2019 WL 3936399, at *4 (D. Nev. Aug. 20, 2019) (explaining that a plaintiff cannot show jurisdiction based on a claim that defendant has allegedly "targeted" its conduct at a known forum resident).

Because "the lawsuit [is] not 'tethered to Nevada in any meaningful way' aside from [one] [P]laintiff's residency," dismissal is "required." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1214

---

[9] The Complaint attributes certain actions to all "Defendants" or to "the Government" without attempting to ascribe such action to any particular individual. For example, Plaintiffs allege that "Defendants introduced legislation" targeting Plaintiffs. Compl. ¶ 2; *see id.* ¶ 105. The Court should disregard such impermissible group pleading, particularly where, as in this example, the Government Official Defendants (none of whom are members of the Republic's Parliament) clearly have nothing to do with the alleged action. But, even if the Court were to consider such allegations in its personal jurisdiction analysis, Plaintiffs would still fall far short of proving minimum contacts because none of the allegations against "Defendants" or "the Government" has any U.S. nexus other than the jurisdictionally irrelevant fact that one Plaintiff, Jysan Holding, is a U.S. entity.

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

(9th Cir. 2022) (summarizing *Walden*, 571 U.S. at 286-90). To hold otherwise would return personal jurisdiction standards to the pre-*Walden* era, in which courts, including the Ninth Circuit, held that "wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state" was sufficient to establish personal jurisdiction. *Axiom Foods*, 874 F.3d at 1070 (quoting *Washington Shoe Co.*, 704 F.3d at 675, and explaining that *Walden* rejected this standard); *see Lerner*, 2019 WL 3936399, at *4 (discussing *Walden*'s rejection of the Ninth Circuit's personal jurisdiction case law).

Finally, even if Plaintiffs could rely on actions by the Republic, its agencies, or other individuals to establish jurisdiction over the Government Official Defendants—which they cannot, *see Glob. Commodities Trading Grp.*, 972 F.3d at 1109—the Complaint would still fail to show that the Government Official Defendants have sufficient minimum contacts with the United States to comport with due process. None of the actions ascribed to the Republic[10] have any U.S. nexus but for Jysan Holding's fortuitous Nevada residence. In particular, Plaintiffs' allegation that Defendants knew First Heartland Bank's dividend payments would eventually and circuitously reach the United States (before returning to schools in Kazakhstan) does not establish minimum contacts because "the foreseeability of causing injury" in a forum "is not a 'sufficient benchmark' for exercising personal jurisdiction." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkwagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)); *see Walden*, 571 U.S. at 289-91. For these reasons, Plaintiffs have not established that the Government Official Defendants have purposefully directed any conduct to the United States.

### B. The Claims in the Complaint Do Not Arise out of the Government Official Defendants' Forum-Based Contacts

Plaintiffs fail the second prong of the Ninth Circuit's test for specific jurisdiction: that "the claim must be one which arises out of or relates to the defendant's forum-related activities." *Axiom*

---

[10]     This includes: (1) launching investigations into the banks and/or their officials, Compl. ¶¶ 62-72, 75-82, (2) blocking First Heartland Bank from making dividend payments, *id.* ¶¶ 79, 83-87, 95-98, (3) threatening criminal actions, *id.* ¶¶ 89-93, (4) passing legislation affecting the banks, *id.* ¶¶ 106-10, and (5) filing enforcement actions against Plaintiffs, *id.* ¶¶ 111-14, 116-18.

*Foods*, 874 F.3d at 1069. As explained above, the Government Official Defendants did not engage in any forum-related activities, so Plaintiffs' claims did not arise out of such activities.

### C. Exercising Personal Jurisdiction Over the Government Official Defendants Does Not Comport with Notions of Fair Play and Substantial Justice

Even if the Government Official Defendants had forum-related contacts, personal jurisdiction still does not exist because the Government Official Defendants can show that exercising jurisdiction would "violate notions of fair play and substantial justice." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993). Courts consider the following seven factors in assessing this question, all of which weigh in the Government Official Defendants' favor.

*First*, the Court must consider the "extent of the . . . purposeful interjection into the forum state's affairs." *Id.* The less purposeful interjection there is, the more likely that exercising jurisdiction will be unreasonable. *See id.* Even if the Government Official Defendants' respective U.S. contacts were sufficient to satisfy the purposeful-direction test (which they are not), those contacts are at best "attenuated" for the reasons discussed above. *See supra* Section IV.A.

*Second*, the "burden on the [Government Official Defendants] of defending in" Nevada weighs against exercising personal jurisdiction. *Core-Vent*, 11 F.3d at 1487. The Government Official Defendants are Kazakhstani citizens and residents. Compl. ¶¶ 18-20. They are "individuals with little or no physical contacts with" Nevada. *Core-Vent*, 11 F.3d at 1489. Exercising jurisdiction in this case would impose a substantial burden on them. *See id.*

*Third*, the exercise of personal jurisdiction would "conflict with the sovereignty of the [Government Official Defendants'] state." *Id.* The Government Official Defendants are, of course, government employees who were acting under color of Kazakhstani law. Compl. ¶¶ 18-20, 60. The Republic has a substantial interest in regulating its own affairs within its own territory—including investigating possibly unlawful acts by Kazakhstani entities—without its employees being haled into a U.S. court to answer for their official acts. This is particularly the case given that Plaintiffs and their subsidiaries are the very entities under investigation. This Court should not insert itself into the Republic's investigations at the behest of those investigations' targets.

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

*Fourth*, Nevada's "interest in adjudicating th[is] dispute" is insignificant. *Core-Vent*, 11 F.3d at 1489. Only one Plaintiff, Jysan Holding, is a Nevada (or even U.S.) entity. Compl. ¶¶ 11-12. Plaintiffs allege that all the funds at issue eventually go to schools *in Kazakhstan*, less Plaintiffs' "operational expenses." *Id.* ¶¶ 46, 50. That the only Nevada entity involved in the case exists solely to hold assets for a non-party charity whose beneficiaries are all located in Kazakhstan eliminates Nevada's sovereign interest in this dispute.

*Fifth*, litigation in this Court would not be an "efficient judicial resolution of the controversy." *Core-Vent*, 11 F.3d at 1487. The allegedly tortious events that the Complaint describes occurred in Kazakhstan. The Complaint makes clear that a majority (if not all) of the witnesses and evidence are located in Kazakhstan. Moreover, choice-of-law rules require application of Kazakhstani law to Plaintiffs' claims. *See infra* Section V.D.

*Sixth*, "the importance of the forum to the [Plaintiffs'] interest in convenient and effective relief" is insignificant here. *Core-Vent*, 11 F.3d at 1487. Nevada cannot be an important forum for JTL's interests given that it is an English and Welsh entity. Any interest that Jysan Holding—the sole Nevada party—may have in bringing the case here is substantially outweighed by both (1) the inconvenience of the forum to the Government Official Defendants, witnesses, and evidence custodians; and (2) the affront to the Republic's sovereignty of having its officials sued in a U.S. court merely because the indirect parent of a Kazakhstani entity happens to be domiciled there.

Lastly, Plaintiffs bear the burden of showing the unavailability of an alternative forum for their claims. *See id.* at 1490. This factor weighs the *availability* of an alternative forum, not Plaintiffs' preference. *See id.* Plaintiffs cannot show the unavailability of another forum.

## V.   THE COURT SHOULD DISMISS THE COMPLAINT ON *FORUM NON CONVENIENS* GROUNDS

Under the doctrine of *forum non conveniens*, "[a] district court has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001). The Court must consider: (1) whether an adequate alternative forum exists; (2) whether the balance of private factors favors

dismissal; and (3) whether the balance of public factors favors dismissal. *See id.* Additionally, the Court must conduct a choice-of-law analysis. *See id.* at 1148.

## A.    Kazakhstan Is an Adequate Alternative Forum

Kazakhstan is an adequate forum because (1) Defendants are subject to service of process there, and (2) Kazakhstan "provides . . . [P]laintiff[s] with some remedy." *Id.* at 1143 (describing this two-part test). Defendants are all Kazakhstani entities or residents who are plainly subject to service of process there. Moreover, Kazakhstani law provides a remedy: Article 9, Paragraph 5 and Article 922, Paragraphs 1 and 3 of the Kazakhstan Civil Code permit suits for damages against the Republic or a governmental body for the government's unlawful acts, actions, and omissions.[11]

## B.    Private Interest Factors Favor Dismissal

The Ninth Circuit has identified seven "private interest" factors relevant to *forum non conveniens*. *See Lueck*, 236 F.3d at 1145. They all favor dismissal in this case.

The first five factors relate directly to the inconvenience of Plaintiffs' selected forum relative to a Kazakhstani court: (1) "the residence of the parties and the witnesses"; (2) "the forum's convenience to the litigants"; (3) "access to physical evidence and other sources of proof"; (4) "whether unwilling witnesses can be compelled to testify"; and (5) "the cost of bringing witnesses to trial." *Id.* All of these factors weigh heavily in favor of dismissing this action.

Every Defendant is a Kazakhstani entity or resident, as are Plaintiffs' subsidiaries, FHS and

---

[11]    "The damages caused to a citizen or a legal person as a result of issuance by a state authority or other state body of an act, which does not comply with the legislation, and also by actions (inactions) of the officials of those bodies, shall be subject to compensation by the Republic of Kazakhstan or by the relevant administrative-territorial unit." Civil Code art. 9, ¶ 5 (Kz.).

"Harm, caused as a result of issuance by state bodies of acts that do not comply with the legislative acts, shall be compensated upon a court decision, regardless of the fault of the bodies and officials, who issued the act. The harm is to be compensated at the expense of the state treasury. Financial bodies or other bodies and citizens on a special assignment shall act as a representative of the treasury." *Id.* art. 922, ¶ 1.

"Harm caused by state bodies' officials due to unlawful actions (inactions) in the administrative governance area shall be compensated on a general basis (article 917 of this Code) at the expense of money at the disposal of these bodies. If they are insufficient, the harm shall be compensated subsidiarily at the expense of the state treasury." *Id.* art. 922, ¶ 3; *see* Ex. 1, Z. Nogaibay Decl. ¶¶ 6-8.

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

15

First Heartland Bank. Compl. ¶¶ 12-20, 29. Only one Plaintiff is a Nevada, or even U.S., entity. *Id.* ¶¶ 11-12. The Complaint makes clear that the vast majority of witnesses are in Kazakhstan (i.e., either government officials or FHS or First Heartland Bank employees). It would thus be far costlier to bring the Kazakhstani-based witnesses to the United States for trial than vice versa. Furthermore, most of the documentary evidence is likely in Kazakhstan. Any such evidence in the United States is subject to compulsory process. In contrast, there are likely Kazakhstani non-parties who possess evidence over whom the Court does not have authority. *E.g.*, Compl. ¶¶ 40-42, 86. Likewise, the parties have little recourse against a foreign resident who disobeys a subpoena. *See Ayco Farms, Inc. v. Ochoa*, 862 F.3d 945, 950-51 (9th Cir. 2017).

Kazakhstan is also a far more convenient forum to the parties. Plaintiffs have substantial connections to Kazakhstan. Nearly all of their assets are in or from Kazakhstan. Compl. ¶¶ 47, 52. The claims in the instant case arise directly out of Plaintiffs' Kazakhstani connections. In contrast, none of the Defendants has any connection whatsoever to the United States. *See supra* Part IV. For these reasons, the Court should find that the first five private interest factors favor dismissal.

The sixth factor, "the enforceability of the judgment," favors dismissal as well. *Lueck*, 236 F.3d at 1145. If this Court enters a judgment against Defendants, Plaintiffs would either need to initiate an ancillary proceeding under 28 U.S.C. § 1610 to attach the Republic's property in the United States (if it has any), or try to enforce the Court's judgment in a Kazakhstani court. There is no international treaty for the recognition and enforcement of foreign civil judgments to which both the United States and the Republic are signatories. This factor weighs in Defendants' favor.

Lastly, the Court may weigh "practical problems that make trial of a case easy, expeditious, and inexpensive." *Lueck*, 236 F.3d at 1145. The Court should consider that substantial amounts of documentary evidence would likely need to be translated from Russian and Kazakh to English. And documents filed with the Court will need to be translated from English to Russian. *E.g.*, ECF No. 16 (providing the Government Official Defendants with a Russian translation of the Complaint). Given the likely volume of documentary evidence if this case were to proceed to discovery, such

1    an exercise in translation would be neither easy, nor expeditious, nor inexpensive.

2    **C.    Public Interest Factors Favor Dismissal**

3        The Court should dismiss the Complaint on *forum non conveniens* grounds because the

4    "public interest" factors also weigh heavily in favor of dismissal. First, there is little "local interest"

5    in the lawsuit. *Lueck*, 236 F.3d at 1147. Only one Plaintiff is a Nevada entity. It is a mere holding

6    company for a charity all of whose beneficiaries are located in Kazakhstan. Compl. ¶¶ 11-12, 46.

7    Nevada, therefore, does not have a substantial interest in the outcome of this case. In contrast, the

8    Kazakhstani interests are immense. The issue in the parties' dispute is the proper ownership of

9    billions of dollars that should support children's education in Kazakhstan. *Id.* ¶¶ 1, 46. There is no

10   doubt that Kazakhstani interests greatly exceed what little interest Nevada might have in this case.

11       The Court's familiarity with the governing law weighs in favor of dismissal. Kazakhstani

12   law applies to Plaintiffs' tort claims. *See infra* Section V.D. The Court need not burden itself with

13   learning foreign law when Plaintiffs can bring their claims before a Kazakhstani court.

14       The last three public interest factors are the "burden on local courts and juries," "congestion

15   in the court," and "the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147.

16   As discussed above, this case serves no local interest. The Kazakhstani interests at stake are

17   tremendous. Neither the Court nor the citizens of Nevada should have to donate their limited time,

18   resources, and attention to litigation that can and should be resolved in Kazakhstan.

19   **D.    Kazakhstani Law Applies to Plaintiffs' Claims**

20       The Court must make a choice-of-law determination as part of its *forum non conveniens*

21   analysis. *See id.* at 1145. The Court must apply Nevada choice-of-law rules. *See Cassirer v.*

22   *Thyssen-Bornemisza Collection Found.*, 142 S.Ct. 1502, 1508 (2022).[12] Nevada courts apply the

23

24   _____

      [12]    *Cassirer* by its terms only applies to "non-federal" claims. 142 S.Ct. at 1508. But the Ninth Circuit

25   has required choice-of-law analyses when plaintiffs raise federal statutory causes of action as well. *See, e.g.*,
      *Creative Tech., Inc. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 699-700 (9th Cir. 1995). Where the choice-of-law

26   analysis requires application of foreign law, courts may dismiss on *forum non conveniens* grounds a
      complaint purportedly arising under a federal statute, even if the statute contains a provision requiring venue

27   in U.S. courts. *See Zipfel v. Halliburton Co.*, 832 F.2d 1477, 1483-87 (9th Cir. 1987).

28                 Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

                                                    17

provisions of the Restatement of Conflict of Laws. *See Dictor v. Creative Mgmt. Servs., Inc.*, 223 P.3d 332, 335-36 (Nev. 2010). Because Plaintiffs' claims sound in tort and the Restatement does not contain specific provisions for the claims at issue, the Court must apply § 145:

> (1)      The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2)      Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a)      the place where the injury occurred,
> >
> > (b)      the place where the conduct causing the injury occurred,
> >
> > (c)      the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d)      the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflicts of Laws § 145.[13]

     The § 145 factors support the application of Kazakhstani law. All of the relevant conduct occurred in Kazakhstan, and all Defendants are Kazakhstani entities or residents. The relationship between the parties—if one can be said to exist, given the Complaint indicates that Defendants' contacts were with Plaintiffs' subsidiaries rather than Plaintiffs—is centered in Kazakhstan.

     The Court should not give undue weight to the place where the (attenuated) injury allegedly occurred. Although Jysan Holding claims injury in Nevada, it is a holding company for a charity with beneficiaries in Kazakhstan. Compl. ¶ 46. Thus, if Plaintiffs' allegations are true, the most

---

[13]      The § 6 factors are: the needs of the interstate and international systems; the relevant policies of the forum; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability, and uniformity of result; and the ease in the determination and application of the law to be applied. *Id.* § 6.

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

18

salient injury accrues to the schools and students in Kazakhstan. Moreover, JTL claims that its alleged injury did not occur in Nevada, but in the United Kingdom. *Id.* ¶ 12. Any argument Jysan Holding could make to apply Nevada law based on the alleged place of its injury would necessarily support applying U.K. law to JTL's claims, thus requiring application of two jurisdictions' laws.

The § 6 factors also require application of Kazakhstani law. Most significantly, "the needs of the . . . international system[]," "the protection of justified expectations," and "certainty, predictability, and uniformity of result" weigh in the Government Official Defendants' favor. Restatement (Second) of Conflicts of Laws § 6(a), (d), (f). The Republic's sovereign functions would be substantially impaired if it must assess whether its officials will be haled into a foreign country's courts to answer for alleged violations of that country's laws. The Republic and its agencies and officials justifiably expect that their conduct within the Republic's territory will not be subject to the scrutiny of foreign courts. And to subject the Republic's sovereign acts within its own territory to U.S law—notwithstanding the lack of any U.S. nexus whatsoever—would create uncertainty and unpredictability in what law applies to the Republic's conduct of its own affairs.

The ease in the determination and application of the law to be applied favors applying Kazakhstani law. *Id.* § 6(g). If the Court were to determine that Kazakhstani law applies, then it would likely dismiss the action on *forum non conveniens* grounds. In contrast, if the Court were not to dismiss the case and apply the law of the place of injury, it would have to apply U.S. law to Jysan Holding's claims and U.K. law to JTL's. Determining that Kazakhstani law applies (and dismissing the case) would also further Nevada's "important public policy" in avoiding "the diversion of time and scarce judicial resources." *Berkson v. LePome*, 245 P.3d 560, 566 (Nev. 2010) (discussing policy reasons for the doctrine of issue preclusion). Lastly, the distinctly Kazakhstani interests at stake—i.e., ownership of billions of dollars for education in Kazakhstan—towers over Nevada's. Restatement (Second) of Conflict of Laws § 6(c).

## VI.   THE COURT SHOULD DISMISS THE COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS

The Court granted leave for Plaintiffs to serve the Government Official Defendants by DHL

courier to their offices in Kazakhstan. ECF No. 17. Plaintiffs requested leave for this alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3). ECF No. 15. However, because the Government Official Defendants are entitled to sovereign immunity, *see supra* Part III, "the claims against the [Foreign Official Defendants] should be treated as claims against the [Republic] itself. As such, like the [Republic], service as to the [Foreign Government Defendants] is governed by" 28 U.S.C. § 1608(a). *Photos*, 2020 WL 6889016, at *7 (holding that service on foreign officials is governed by § 1608(a) when the claims against those officials "should be treated as claims against the [foreign state] itself"). And § 1608 does not authorize Plaintiffs' method of service on a foreign state. *See, e.g.*, *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1053-54 (2019); Fed. R. Civ. P. 4(j). Therefore, Plaintiffs' attempted service was insufficient.

## VII.   COUNTS TWO AND THREE FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

To survive a Rule 12(b)(6) motion, Plaintiffs must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept the Complaint's factual allegations and construe them in the light most favorable to Plaintiffs. *See Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Counts Two and Three allege, respectively, that the Government Official Defendants violated the Racketeer Influenced & Corrupt Organizations Act ("RICO") and its state-law counterpart, NRS 207.400 ("state RICO"). The Court should dismiss these claims because they allege purely extraterritorial conduct, which is insufficient to state a claim under either statute.

### A.   RICO Does Not Apply Extraterritorially

Unless Congress specifies otherwise, federal laws only apply to conduct within U.S. territory. *See Morrison v. Nat. Australia Bank Ltd.*, 561 U.S. 247, 255 (2010). The Supreme Court has held that RICO applies to foreign conduct only if the statute defining the predicate racketeering activity applies extraterritorially. *See RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 339

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

20

…

1   (2016). The only racketeering activity identified in the Complaint is Hobbs Act extortion. Compl.

2   ¶ 61. Accordingly, RICO applies extraterritorially in this case only if the Hobbs Act, 18 U.S.C.

3   § 1951, applies extraterritorially. *See RJR Nabisco*, 579 U.S. at 339. If it does not, then the Court

4   must determine whether Plaintiffs have sufficiently pleaded a domestic application of RICO and

5   the Hobbs Act. *See WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2136 (2018).

6       "When a statute gives no clear indication of an extraterritorial application, it has none."

7   *Morrison*, 561 U.S. at 255. Nothing in the Hobbs Act remotely suggests that it applies to

8   extraterritorial conduct, let alone gives a clear indication that it so applies. *See United States v. All

9   Assets Held at Bank Julius*, 251 F. Supp. 3d 82, 100 (D.D.C. 2017) ("[T]he language of the Hobbs

10   Act does not rebut the presumption against extraterritoriality."). The Hobbs Act's mere references

11   to foreign commerce and its use of the word "any" in describing the conduct prohibited do not rebut

12   the presumption against extraterritoriality. *See RJR Nabisco*, 579 U.S. at 350-51 (use of word "any"

13   is insignificant); *Morrison*, 561 U.S. at 263 (reference to foreign commerce does not give a statute

14   extraterritorial effect); *All Assets*, 251 F. Supp. 3d at 100.

15       Therefore, Plaintiffs RICO claim fails unless the Complaint alleges a domestic application

16   of the Hobbs Act. *See WesternGeco*, 138 S. Ct. at 2136. It does not.

17       To determine whether Plaintiffs plead a domestic application of the Hobbs Act, the Court

18   must identify the statute's "focus," i.e., "the object of its solicitude, which can turn on the 'conduct,'

19   'parties,' or interests it regulates or protects." *Id.* (alterations omitted) (quotation marks omitted).

20   "If the conduct relevant to the statute's focus occurred in the United States, then the case involves

21   a permissible domestic application even if other conduct occurred abroad." *RJR Nabisco*, 579 U.S.

22   at 337. "[B]ut if the conduct relevant to the focus occurred in a foreign country, then the case

23   involves an impermissible extraterritorial application" of the federal statute. *Id.*

24       None of the conduct described in the Complaint occurred in the United States, whether or

25   not that conduct relates to the Hobbs Act's focus. Therefore, the Complaint cannot possibly plead

26   a domestic application of that statute. *See id.* (requiring conduct in the United States for a domestic

27

28

application). The allegation that a U.S. entity owns some of the property at issue—indirectly and through multiple layers of foreign companies—is insufficient to carry Plaintiffs' burden of showing a domestic application of the Hobbs Act. *See All Assets*, 251 F. Supp. 3d at 100-01.

Instead, the focus of the Hobbs Act is "the extortion" itself. *Id.* Extortion is "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2). FHS and First Heartland Bank, two Kazakhstani entities, possess the property at issue. Compl. ¶¶ 2, 29, 43, 66, 79, 94-98. After detours in the United Kingdom and United States, the property returns to Kazakhstan. *Id.* ¶ 46. Every aspect of the alleged extortion occurred in Kazakhstan: (1) the obtaining of property, (2) the taking that property from another, and (3) the wrongful use of actual or threatened force, violence, or fear, or under color of official right. *Id.* ¶¶ 60-116. The Complaint thus pleads an extraterritorial application of RICO and the Hobbs Act, and the Court should dismiss Count Two.

**B.      State RICO Does Not Apply Extraterritorially**

The state RICO statute is a criminal statute that affords a civil remedy. *See* NRS 207.400 (defining the criminal offense), 207.470 (providing a civil remedy). In *Ditech Financial LLC v. Buckles*, 401 P.3d 215, 216-17 (Nev. 2017), the Nevada Supreme Court rejected the extraterritorial application of a similar law—Nevada's wiretapping statute. *See* NRS 200.690 (defining the criminal offense), 200.620 (providing a civil remedy). The issue in *Ditech* was whether, in a civil case, Nevada's wiretapping statute "applies to recordings of telephone conversations with a person in Nevada without that person's consent when the recordings are made by a party who is located and uses recording equipment outside of Nevada." 401 P.3d at 217. The court rejected the plaintiff's argument that the wiretapping statute applied simply because the defendant's "conduct caused harm in Nevada." *Id.* The court held instead that the statute did not apply where "the allegedly prohibited conduct . . . took place outside Nevada." *Id.*

Plaintiffs allege that the Government Official Defendants violated state RICO based purely on alleged conduct outside of Nevada. This is insufficient as a matter of law to state a claim. *Cf. id.*

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss

22

There is no reason to think the Nevada Supreme Court would treat these two similarly structured laws differently. Moreover, as a criminal statute, state RICO is limited by NRS 171.020, which provides that Nevada's criminal statutes are enforceable only where Nevada courts have territorial jurisdiction, meaning the defendant has "perform[ed] any act in [Nevada] in furtherance of [his] criminal intent." *McNamara v. State*, 377 P.3d 106, 111 (Nev. 2016). There is no textual basis in the state RICO statute for giving it different extraterritorial effects in civil versus criminal cases.[14] The Complaint does not allege that any Defendant performed any act in the State of Nevada. Therefore, the state RICO statute does not apply, and the Court should dismiss Count Three.

## VIII.   CONCLUSION

The Court should dismiss the Complaint because the Government Official Defendants are entitled to sovereign immunity. Moreover, the Court lacks personal jurisdiction, this is an inconvenient forum, service of process was insufficient, and the RICO counts fail to state a claim.

DATED April 13, 2023.

MCNUTT LAW FIRM, P.C.

*/s/ Dan McNutt*
Daniel R. McNutt, Esq., Bar No. 7815
Matthew C. Wolf, Esq., Bar No. 10801
11441 Allerton Park Drive, #100
Las Vegas, Nevada 89135

WHITE & CASE LLP
Michael Kendall (*pro hac vice* forthcoming)
Alexandra Gliga (*pro hac vice* forthcoming)
Dan Medici (*pro hac vice* forthcoming)
75 State Street
Boston, Massachusetts 02109

*Counsel for Defendants Madina Abylkassymova,*
*Olzhas Kizatov, and Arman Omarbekov*

---

[14] Even if there were, the Nevada Supreme Court does not give extraterritorial effect to state statutes "[a]bsent legislative direction." *Lake Tahoe Land Co., Inc. v. Diversified Mortg. Invs.*, 603 P.2d 270, 273 (Nev. 1979). The State RICO statute gives no textual indication that it applies extraterritorially.

1

## CERTIFICATE OF SERVICE

2

The undersigned is an employee of McNutt Law Firm, P.C. and certifies that under Fed.

3

R. Civ. P. 5, on April 13, 2023, I served a true and correct copy of **DEFENDANTS MADINA**

4

**ABYLKASSYMOVA, OLZHAS KIZATOV, AND ARMAN OMARBEKOV'S MOTION**

5

**TO DISMISS** via electronic mail to all persons registered to receive service in this action through

6

the United States District Court's CM/ECF system.

7

8

*/s/ Lisa Heller*

9

An Employee of McNutt Law Firm, P.C.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Madina Abylkassymova, Olzhas Kizatov, and Arman Omarbekov's Motion to Dismiss